INSD Pro Se Civil Rights Complaint (unrelated to imprisonment) 12/19 (adapted from AO Pro Se 15 (Rev 6/24))

# UNITED STATES DISTRICT COURT

for the

Southern District of Indiana

Richard Dean Mattox

*Plaintiff(s)*
*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

-v-

David Craig, individually
Travis Wagner individually; City of Indianapolis

*Defendant(s)*
*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names. Do not include addresses here.)*

Case No. 1:26-cv-2272-RLY-MKK
*(to be filled in by the Clerk's Office)*

FILED
10/20/2026
U.S. DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Kristine L. Seufert, Clerk

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
(Non-Prisoner Complaint)

**Demand for Jury Trial** ☑ Yes ☐ No

**NOTICE**

Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date, the full name of a person known to be a minor, or a complete financial account number. A filing may include *only*: the last four digits of a social security number, the year of an individual's birth, a minor's initials, and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievances, witness statements, evidence, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

## I. Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

**A.** Are you bringing suit against *(check all that apply)*:

☐ Federal officials (a *Bivens* claim)

☑ State or local officials (a § 1983 claim)

**B.** Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

First Amendment freedom of speech and right to petition, applied through the Fourteenth Amendment. Individual retaliation claims and municipal responsibility for that alleged deprivation. See attached continuation.

**C.** Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

Not applicable. No federal official is sued.

**D.** Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. If you are suing under section 1983, explain how each defendant acted under color of state or local law. If you are suing under *Bivens*, explain how each defendant acted under color of federal law. Attach additional pages if needed.

Craig acted through IMPD; Wagner acted as a City zoning inspector.
The City is sued directly for the municipal practice or authorized policy decision alleged in the continuation. The claim concerns acts under City authority, not merely the employment relationship. See the attached facts and separate counts.

## II. The Parties to This Complaint

### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | | | |
|---|---|---|---|
| Name | Richard-Dean Mattox | | |
| Address | 7135 East 14th Street | | |
| | Indianapolis | IN | 46219 |
| | *City* | *State* | *Zip Co* |
| County | Marion | | |
| Telephone Number | 317-539-1705 | | |
| E-Mail Address | richardmattt@gmail.com | | |

### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known) and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both. Attach additional pages if needed.

Defendant No. 1

| | | | |
|---|---|---|---|
| Name | David Craig | | |
| Job or Title *(if known)* | IMPD officer at relevant time | | |
| Address | Current service address not yet verified | | |
| | Not yet verified | | |
| | *City* | *State* | *Zip Code* |
| County | Not yet verified | | |
| Telephone Number | Unknown | | |
| E-Mail Address *(if known)* | Unknown | | |

☑ Individual capacity ☐ Official capacity

Defendant No. 2

| | |
|---|---|
| Name | City of Indianapolis |
| Job or Title *(if known)* | Municipal entity sued directly |
| Address | 200 East Washington Street |
| | Indianapolis (*City*) IN (*State*) 46204 (*Zip code*) |
| County | Marion |
| Telephone Number | Unknown |
| E-Mail Address *(if known)* | Unknown |

☐ Individual capacity ☐ Official capacity

Defendant No. 3

| | |
|---|---|
| Name | Travis Wagner, individually; details in continuation |
| Job or Title *(if known)* | City zoning inspector at relevant time |
| Address | Current service address not yet verified |
| | Not yet verified (*City*) (*State*) (*Zip Code*) |
| County | Not yet verified |
| Telephone Number | Unknown |
| E-Mail Address *(if known)* | Unknown |

☑ Individual capacity ☐ Official capacity

## III. Statement of Claim

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

**A.** Where did the events giving rise to your claim(s) occur?

7135 East 14th Street, Indianapolis, Marion County, Indiana.

**B.** What date and approximate time did the events giving rise to your claim(s) occur?

October 22, 2024; June 8, 2025; later events in continuation.

**C.** What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*

I allege Craig threatened arrest in retaliation for my objections and complaint request. I also allege Wagner retaliated for my Lodge complaints through an erroneous sign-enforcement allegation at the home I rent from Wesley Kalata.

The attached continuation states separate claims, supporting facts and injuries.

The City claim concerns the police practice described in Count Two.

I seek my own damages, not Wesley Kalata's damages.

## IV. Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

I report fear of arrest, reduced use of the disputed strip, anxiety, sleep difficulty, and aggravation of existing symptoms. I do not attribute my prior stroke to Craig. I see my doctor about every four months and have mentioned stress and sleep issues. Earlier distress predates this event; I seek only the harm caused or aggravated by the alleged violations. Section IV distinguishes the harms attributed to each individual. No new diagnosis or life-expectancy loss is alleged.

## V. Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged. Explain the basis for these claims.

I request $21,000,000 total across all defendants and counts, including compensatory damages and supported punitive damages against Craig and Wagner. No punitive damages are requested against the City; no duplicate recovery is sought. The basis is the alleged fear, distress and interference with use of my home. Alternatively, I request damages proved, nominal damages if appropriate, taxable costs and other appropriate relief. A jury trial is requested.

## VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 10/20/2026

Signature of Plaintiff [signature]

Printed Name of Plaintiff Richard Dean Mattox

**Complaint Continuation**

Richard Dean Mattox v. David Craig and Travis Wagner individually and City of Indianapolis
Continuation of Sections III and IV of the attached six page complaint form

**Section III Statement of Claim Continued**

1. Mattox has resided at 7135 East 14th Street since 2018 and rents living space within the home from its owner, Wesley John Kalata. Mattox reports signing a rental agreement each year. The agreement dated December 30, 2025, effective January 1, 2026, describes one bedroom and one bathroom and a month-to-month tenancy. Separately, Kalata permits Mattox to use, garden in and maintain the disputed strip. Mattox asserts his own lawful occupancy and permitted use; he does not claim ownership of Kalata's land or that the written lease itself establishes the outdoor boundary. The dispute concerns the neighboring property at 7131 East 14th Street. Mattox disputes treating the existing fence as the legal boundary; acknowledging that the neighboring blue house belongs to someone else does not concede ownership of the disputed strip.

1a. Mattox describes a loss of security during his residence beginning in 2018. The specific private intimidation incidents identified in the reviewed chronology occurred on July 6, September 11 and October 30, 2021. Mattox reported anti-gay insults, stalking and a shotgun threat by former neighboring occupant Robert Hornett. Mattox and Kalata sought police and victim-advocate assistance. The chronology also records a detective investigation, submission to the prosecutor, criminal proceedings and no-contact orders. Mattox does not allege that police never acted. These events explain his subsequent requests for help and existing distress; private insults and threats are not attributed to Craig or Wagner merely because they preceded their conduct.

1b. Mattox and Kalata also repeatedly complained about music and other conditions at the Moose Lodge. Their records include calls, texts, requests for supervisory help and disputes about

noise-enforcement hours and responses. The recording collection includes other callers and incidents; Mattox does not claim that all 62 recordings are his calls or establish 62 constitutional violations. Some call handlers promised dispatch or supervisory follow-up. His own October 2024 communications described below are part of this longer course of petitioning.

2. On June 8, 2025, Heather Allee called police. Calls-for-service record IP25060800000932 lists a vandalism complaint at 7131 East 14th Street, dispatch at 1:59:02 p.m., arrival at 2:06:38 p.m. and closure at 2:20:35 p.m., with a no-report disposition. Craig was identified as the primary unit officer; Lawrence Cress II also attended.

3. Mattox was at home and communicated through Ring. The officers described the neighbors' tree complaint. Mattox disputed the boundary, asked whether the neighbors had a survey and asserted that the issue was civil. Witness accounts differ about the opening speaker; Mattox attributes the later jail warning described below to Craig.

4. According to the residents' account, Craig described criminal trespass and directed Nancy Allee to tell the residents they were not permitted on her property. Nancy did so. Mattox stated that he had previously told Nancy not to enter his property and requested police action on his complaint about her entry, including offering to swear out a complaint.

5. Mattox alleges that after his complaint request, Craig warned that Mattox would go to jail if he went over there again and directed him not to cross the fence. The officers left without taking the complaint Mattox requested. Mattox alleges no arrest, detention, search or prosecution during this encounter.

6. The residents generally avoided the disputed strip after the warning because they feared arrest, with one planting occasion on May 25, 2026. The warning's precise geographic scope and the

legal boundary remain disputed. The residents' later survey does not establish what the officers knew on June 8.

7. Mattox prepared a complaint dated June 9, 2025, emailed it to Leepper on June 10, 2025, and submitted CPCO complaint 2025-020F. The agency's August 26 response found no verifiable misconduct and described the event as a civil tree dispute. The residents disagree. They acknowledge that the agency referred to Ring evidence and that both officers supplied identifying information; no blanket allegation that neither identified himself is made.

8. Kalata reports that the officers did not know of his earlier MIBOR complaint. This claim relies on Mattox's expression during the police encounter rather than assuming knowledge of that earlier complaint.

9. On May 25, 2026, different IMPD officers again addressed the boundary dispute. Kalata identifies the responders as Daniel Butler, Amy Younge and Casey Helms, and identifies Butler and Younge as approaching the door. The participant account and recordings concern an instruction to remain away from the disputed area pending a survey and use of the fence as a practical limit. Mattox offers this separate event as relevant to the asserted police practice and continuing effect on his permitted use. He does not attribute Craig's June 2025 jail warning to these later officers. No separate personal count is asserted against them in this complaint.

10. Wesley sent complaints or requests for supervisory review concerning the later boundary dispute to Michael Leepper and Scott Hessong, and a June 19, 2026 letter to the Chief of Police. Mark Rand responded on June 22, 2026 that police do not resolve civil property boundaries. Those later communications concern institutional handling and notice after June 2025.

11. The August 26, 2025 CPCO response stated that officers facilitated the neighbor's no-trespass notice, described the entry for that purpose as consistent with policy, and reported no verifiable bias, dismissiveness, or inaccuracies. Mattox disputes its assessment of Craig's warning and refusal to take his complaint. The response is evidence of the City's administrative assessment, not an admission of retaliatory intent.

11a. The City's earlier fence handling supplies additional context. In 2021 Joyce Givens inspected the property and the residents identify a no-violation closure concerning the existing fence. Mattox's July 2021 correspondence with Givens also documents direct contact about the fence. The physical sections and conditions at issue must be distinguished from later gate and enclosure additions. Mattox does not allege that an earlier closure exempted every later structure or condition from zoning rules.

12. Mattox also challenges Travis Wagner's October 22, 2024 zoning enforcement at the home Mattox rents from Kalata. Wagner is sued in his individual capacity for actions taken as a City zoning inspector under color of state law. Wagner's current service address and contact information have not yet been verified.

13. Mattox participated in complaints to officials about noise and other conditions at the Moose Lodge, 7055 East 16th Street. On October 7, 2024, he supplied police calls-for-service information and video links in the Lodge follow-up email thread. On October 8, he criticized the hearing process and discussed possible news coverage and a YouTube video. These were Mattox's own communications before the challenged home inspection.

14. The residents placed political campaign signs supporting Kamala Harris and the Democratic candidate for attorney general on October 10, 2024. A RequestIndy screenshot records an October 11 request concerning fencing, height and visibility. The visible intake does not identify

its submitter or mention political signs. Saved records identify Wagner as the officer on September 12 Lodge citations; October 7 correspondence concerned a zoning supervisor and an inspector assigned to the Lodge investigation. Those records alone do not establish what Wagner knew about Mattox's communications.

15. On October 22, 2024, Wagner inspected the residents' home and alleged clear-sight, fence or gate, and political-sign violations. Mattox was present. He recalls Kalata connecting Wagner's name to the Lodge matter and Wagner responding in substance that he was also working with the Lodge on its issues. This is participant recollection of approximate wording, not an authenticated quotation or an admission of retaliation. At 1:55 p.m. that day Mattox emailed Michael Leepper expressing concern that the visit was retaliation for Kalata's Lodge complaint.

16. Kalata disputed the allegations and pursued particulars and supervisory review. On December 10, 2024, Thomas Weber stated that the political sign was not a violation when Wagner alleged it and had been removed from the case. Weber distinguished the compliant existing fence from the gate and trash-enclosure extension. The signs were removed after the election because it was over; Mattox does not allege Wagner compelled removal. The sign correction does not itself establish retaliatory motive or invalidate every separate zoning concern.

17. Mattox alleges that the challenged sign enforcement targeted his shared residence in response to the residents' Lodge complaints, including his own communications. He relies on his participation, the timing, Wagner's Lodge role and the recalled exchange. On information and belief he alleges Wagner knew of his participation when taking the challenged action; the actual communications conveying that knowledge are specifically identified as expected to receive further support through discovery. Presence at the inspection and Wagner's knowledge of Kalata do not alone establish knowledge of Mattox's expression.

18. During Matthew Sparks's zoning visit, Mattox was present and recalls Sparks pointing at the Pride flag. Mattox understood the gesture in context as potentially indicating bias concerning the residents' sexual orientation. In a December 9, 2024 email to City officials, copied to Mattox, Kalata reported that Sparks said he understood why Kalata was being picked on while pointing to the Pride flags. This is Kalata's contemporaneous account, not an independently verified recording quotation. That email dates the visit December 8; the preserved recording filenames and reviewed frame identify December 6. The date and exact accompanying words remain to be reconciled against the original recordings. The automated transcript is incomplete and does not reliably identify the speaker. Mattox offers the gesture and reported remark as context, not as proof by themselves of Wagner's earlier motive or an agreement among officials. Sparks is not named as a defendant.

18a. The 2024 zoning matter involved review above Wagner. Kalata sought responses from Matthew Borden and Thomas Weber after the October 22 inspection. Weber spoke with the residents on October 30, 2024; Mattox was present. The residents sought written particulars, supporting photographs and an opportunity to contest the allegations. On December 10 Weber removed the political-sign allegation, stated that an erroneously mailed citation was voided, and distinguished the existing fence from the gate and trash-enclosure extension. The citation correction and the removal of the sign allegation are separate from the continuing gate dispute.

18b. Kalata submitted a City discrimination questionnaire in December 2024 identifying sexual orientation as the concern and naming Mattox as a witness to both inspector visits and the Weber call. Kalata also submitted a DOJ report on December 14, 2024. These submissions document contemporaneous complaints and requests for help, not findings of discrimination. Mattox is gay and alleges that the reported flag gesture and remark are relevant context for examining whether

the enforcement was discriminatory. This complaint does not represent that Sparks admitted his own bias or that his reported remark alone establishes Wagner's intent.

18c. Kalata pursued an appeal and extensions during the gate dispute. The correspondence includes a May 2025 direction concerning relocation or removal, an extension of reinspection, and July 2025 reinspection. The City closed VIO24-008807 as corrected on July 11, 2025. Mattox and Kalata report performing gate work; Mattox does not seek Kalata's ownership expenses or assert that the closure adjudicated every original allegation false. The sign allegation and the gate requirements are not treated as identical.

18d. Further zoning scrutiny occurred in August 2026. Portal records identify VIO26-006595 and August 12 entries concerning sight-triangle obstructions and fence height or opacity. On August 13 inspector Lauren Nelson emailed alleged violations to Michael Hahn and Sly Martinez; Hahn forwarded the material to Angela Plascencia. Plascencia told Kalata that no violation had been issued at that time and that she was reviewing the inspector's documents. Mattox distinguishes the portal entries from a formally issued notice, citation or corrective order.

18e. On August 18, 2026, Hahn supplied Plascencia with an analysis of clear-sight and fence provisions. He acknowledged the Compact Context front-lot-line classification along 14th Street but identified additional restrictions affecting the Shortridge side. He attributed earlier non-enforcement of some issues to Weber's decision and left pursuit of the asserted violations to Plascencia. This records a supervisory decision process; Mattox does not assert that a supervisor's title alone establishes final municipal policymaking authority or unconstitutional motive.

18f. On August 25, 2026, Plascencia expressly voided VIO26-006595 and stated that the City had no reason to doubt the survey. She described the prior gate and enclosure case as closed in

compliance and referred to clear-sight and possible flora-permit provisions. Kalata continued asking for property-specific measurements, classifications and guidance for proposed work. Mattox does not allege an express stop-work order or that voiding the later case rescinded the earlier gate requirements.

18g. The residents dispute the changing classifications, scope and explanations across these inspections and have sought the internal referral and decision records. They also sought records concerning police handling, the Lodge and the property. Some records were produced and some requests were acknowledged or required clarification. Mattox does not allege that all missing audio was destroyed, that all requests went unanswered, or that an inaccurate answer alone proves retaliation. These matters identify the history and subjects for investigating the particular constitutional claims stated below.

18h. Mattox's police tort notice is dated December 30, 2025. A certified receipt and matching USPS tracking record establish mailing of one envelope to the City on December 30 and delivery on January 2, 2026. Mattox reports that his and Kalata's notices were enclosed together; the postal records alone do not itemize the contents. Two March 18, 2026 OCC letters name Kalata: 26-T-6 denies his zoning claim on notice-timeliness grounds, while 26-T-7 denies his police claim for insufficient information establishing responsibility. Mattox reports receiving no determination on his own notice. These are administrative positions, not court judgments; this complaint asserts no Indiana tort count and does not allege that the notices extended federal filing deadlines.

**Count One First Amendment Retaliation Against David Craig**

19. Mattox incorporates the preceding allegations. He alleges that questioning police handling of the dispute and requesting action on his own complaint were protected expression and that Craig heard those requests.

20. Mattox alleges that Craig used the ensuing jail warning and fence instruction to discourage his objections and complaint request. He relies on the sequence of the request, warning and refusal to accept his complaint, together with the disputed boundary and Craig's role in facilitating the neighbor's warning.

21. Mattox alleges that a threat of arrest by an officer in response to a request to complain would deter a person of ordinary firmness from continuing that expression. He alleges Craig's warning had that effect and caused continuing fear and avoidance of the disputed strip. He alleges the challenged retaliatory threat would not have been made absent his protected expression. This is his allegation of motive, not a claim that Craig admitted retaliation; the competing explanation of ordinary trespass enforcement is disputed.

**Count Two Municipal Liability Against the City of Indianapolis**

22. Mattox incorporates the preceding factual allegations and Count One's alleged First Amendment deprivation. He alleges that the City's practices through the Indianapolis Metropolitan Police Department (IMPD) contributed to Craig's use of an arrest warning and fence instruction to suppress Mattox's objections and request to complain.

23. On information and belief, Mattox alleges that the repeated use of the fence as an enforceable limit in an unresolved civil boundary dispute reflected an actual municipal practice, under which officers facilitated one side's no-trespass demand while terminating the opposing resident's objections through threatened criminal enforcement. He specifically identifies the existence,

duration, municipal authorization, and causal operation of that practice as factual contentions expected to receive further evidentiary support through reasonable discovery.

24. The basis for this inference is the participation of more than one officer in June 2025, Craig's alleged refusal of Mattox's competing complaint, the City complaint office's express assessment of the notice procedure as consistent with departmental policy, and the similar boundary instruction by different officers in May 2026. The later incident and administrative response are offered as circumstantial evidence concerning a practice; plaintiff does not allege they caused the earlier encounter merely because they occurred later. The later supervisory correspondence in paragraphs 9 and 10 is offered as evidence concerning institutional notice and handling, without alleging that later notice itself caused the earlier violation.

25. Mattox alleges on information and belief that the City maintained this practice with deliberate indifference to its use to deter residents' complaints and objections, and that the practice was a moving force behind the retaliatory warning alleged in Count One. The relevant pre-June 2025 policy, training, comparable incidents, supervisory knowledge, and authorization are expected to be within City records and are specifically identified for evidentiary support through discovery.

26. The municipal claim concerns the allegedly retaliatory use of police authority, not simply an inaccurate boundary opinion or disagreement with a complaint investigation. Mattox seeks recovery from the City only upon establishing the municipal practice, required fault, constitutional deprivation, and causal connection. He does not seek employer liability based solely on Craig's employment.

**Count Three First Amendment Retaliation Against Travis Wagner**

27. Mattox incorporates paragraphs 1 and 12 through 17. His Lodge complaints, criticism of official handling and proposed public discussion were his own protected expression. He alleges Wagner used the erroneous political-sign allegation at Mattox's rented home in retaliation for those communications.

28. Mattox alleges that retaliatory enforcement against the home in which he lives would deter a person of ordinary firmness from continuing complaints and criticism. He alleges the challenged conduct aggravated his own stress and loss of security at home, as distinguished from Kalata's personal expenses and losses.

29. Mattox alleges that his protected expression was a motivating factor and that the challenged sign allegation would not have been made absent the residents' protected complaints, including his participation. This is an inference from the stated circumstances, not an admission by Wagner. Whether Wagner knew of Mattox's activity and acted because of it remains disputed. Mattox does not assert that an erroneous citation alone violates the Constitution.

30. Mattox does not attribute Craig's police conduct to Wagner or assert an agreement between them based solely on their City employment. Count Two remains the municipal claim concerning the police practice described there; this addition does not automatically extend that count to zoning enforcement. The additional zoning history in paragraphs 18a through 18g explains the residents' concerns and identifies particular decisions; no independent count against each person mentioned is implied.

**Section IV Injuries Continued**

31. Mattox reports fear of arrest, reduced use of the disputed strip, continued sleep difficulty, anxiety and stress aggravating existing health symptoms. He had health conditions and distress

predating these encounters and does not allege that Craig caused his prior stroke. He seeks damages only for harm caused or aggravated by Craig's alleged constitutional violation. He reports not sleeping through a full night since the first attack even with sleep aids, rather than receiving no sleep at all. He sees his doctor approximately every four months and has mentioned the stress and sleep difficulty; no new diagnosis or medically established reduction in life expectancy is alleged.

32. Mattox reports a prolonged loss of peace and security at home since moving into the home in 2018, through dealings involving neighbors, the Moose Lodge, City inspectors and police. He describes feeling on high alert every day, including when the neighborhood is quiet, and feeling that he must remain ready for another confrontation. He reports difficulty leaving home because of fear for the home and dogs, including fear of a fire or harm to the dogs while he is away. These are his reported fears; he does not allege here that a particular defendant recently made those threats or that those feared events occurred. Mattox reports having 22 Ring cameras throughout the property because he feels a continuing need for security and documentation. Purchase and installation dates and costs have not yet been established. Mattox believes he has been repeatedly targeted personally. He bases that interpretation on the incidents described in this complaint; it is not an allegation that every participant shared a motive or that each defendant acted throughout his residency.

33. Mattox reports that his trust in police has deteriorated to the point that he now relies on text-to-911 to preserve the exact content of his reports. He describes feeling unable to rely on police assistance and fearing another encounter involving neighbors or inspectors. He reports a prior attack involving a next-door occupant, which he identifies as a hate-crime matter, and approximately three years before a conviction. The judgment and charges must establish the

precise criminal disposition. That history supplies context for his fear; it does not establish that Craig caused the attack, controlled the prosecution, or caused every part of his distress. Mattox describes speaking with police from inside his home through the door and Ring camera and avoiding face-to-face police contact unless he feels he has no alternative.

34. Mattox alleges that Craig's challenged police warning aggravated his existing fear, sleep difficulty and sense that his home was unsafe. He seeks compensation for the harm caused or aggravated by the proven constitutional violation. The duration of the broader conflict is not an allegation that Craig acted throughout all eight years. Injury dates, severity, changes after the particular encounters and Craig's causal contribution will be addressed through testimony and other evidence.

35. Mattox reports that since beginning his residence at the home in 2018 he has never walked the neighborhood and has largely limited his outdoor activity there to the area around the house because he fears hostile encounters. He describes diminished willingness to trust or interact with people, loss of some of his hope, and continuing stress underneath an outwardly calm appearance. He is working through these effects. This account describes restrictions on neighborhood activity and does not allege that he never leaves home for any purpose.

36. Mattox reports installing windscreen or privacy screening on his fence because Hornett tried to look through the fence at him. During the roughly three-year period Mattox describes, he also observed a mound or raised area on Hornett's side which he believes was built to permit looking over the fence. The belief about its purpose is Mattox's interpretation, not an admitted motive. These events form part of the history of his loss of privacy and security; no unverified screening cost is claimed, and Hornett's conduct is not automatically attributed to Craig.

37. Mattox estimates that sleep-aid purchases at Sam's Club averaged approximately $600 per year for five years, or approximately $3,000 in total. He reports possessing various receipts and refers to products as NyQuil or ZzzQuil. The precise five-year period, product names, purchase amounts, payer and any increase over earlier ordinary spending remain to be confirmed from receipts. This is an estimate rather than a verified receipt total or a claim that every purchase was caused by Craig. Any recoverable expense is limited to the portion supported by evidence and legally attributable to the proven violations; it is included within Mattox's individual damages demand, not added on top of it or counted again as Kalata's expense.

38. As to Wagner, Mattox seeks only his own proven injury caused or aggravated by the alleged retaliation against his home and protected expression. His tenancy is an interest of his own; he does not seek Kalata's damages, paid-leave losses, or ownership losses. No separate verified out-of-pocket amount attributable to Wagner is alleged. Mattox requests one total of $21,000,000 across all defendants and counts, or damages proved, including nominal damages if appropriate. Any punitive damages are sought only against the individual defendants as legally supported, never against the City. No duplicate recovery is requested. Mattox demands a jury trial.

**Joinder and Alternative Request for Severance**

39. Mattox requests that these claims proceed in one action. They concern his complaints to City officials and alleged retaliatory enforcement affecting his use and security of the same rented home. The residence, his lawful use of the disputed area, some witness testimony and portions of the claimed harm overlap. The police and zoning events involve distinct actors and dates; Mattox states each defendant's conduct and each claim separately. He does not rely solely on common City employment to establish a coordinated course of conduct. Earlier events are offered for

relevant background, notice, motive and injury context; their inclusion is not an assertion that every earlier act is independently timely or actionable.

40. If the Court determines that any party or claim is improperly joined, Mattox requests severance under Federal Rule of Civil Procedure 21 rather than dismissal for misjoinder, with the original filing date preserved to the extent permitted by law. He requests an opportunity to comply with instructions for any separate action, including submitting a separate request to proceed without prepaying fees if required. See Elmore v. Henderson, 227 F.3d 1009, 1012 (7th Cir. 2000). This alternative request does not ask the Court to excuse an independently untimely claim or a deficient claim.